# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JOAN CAROL LIPIN,

        Case No. 1:23-cv-684

      Plaintiff,

        McFarland, J.
        Bowman, M.J.

  v.

ARTHUR DODSON WISEHART,
a/k/a Arthur D. Wisehart, et al.,

      Defendants.

## REPORT AND RECOMMENDATION

On October 23, 2023, Plaintiff Joan Lipin ("Lipin") filed a pro se lawsuit against her deceased husband's son, Arthur D. Wisehart ("ADW"), and his attorney, Mark Apelman, alleging civil violations of the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"). Two days later, Plaintiff filed an amended complaint. For the reasons that follow, the undersigned recommends the *sua sponte* dismissal of this case.

## I. The Court's Inherent Authority to Screen a Complaint

Most pro se litigants proceed *in forma pauperis*.  In exchange for the benefit of proceeding without payment of a filing fee, litigants who proceed *in forma pauperis* are subject to mandatory statutory screening to determine if their complaint is "frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. § 1915(e)(2)(B). Plaintiff is not a pauper and paid the full filing fee for this case, thereby avoiding statutory screening. Nevertheless, this Court retains both the authority and the obligation to review its jurisdiction, and to dismiss even fee-paid cases if appropriate. *See Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). Cases filed by a vexatious litigant

who pays the filing fee often consume a greater amount of judicial resources than cases subject to statutory "frivolousness" screening, but remain subject to dismissal under Rule 12(b)(1) when "the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Rolle v. Litkovitz*, Case No. 1:21-cv-230; 2021 WL 1546110, at *2 (S.D. Ohio April 20, 2021) (citing *Apple v. Glenn*, 183 F.3d at 479). A complaint is frivolous "where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Bardes v. Bush*, 2023 WL 2364664, at *4 n.2 (S.D. Ohio March 6, 2023) (collecting cases in which the Sixth Circuit has applied *Nietzke*'s formulation of frivolousness in the Apple v. Glenn context).

Based on a review of Lipin's amended complaint, the undersigned concludes that it should be dismissed *sua sponte* with prejudice for lack of subject matter jurisdiction because it is totally implausible and frivolous, or alternatively, because issue preclusion bars all claims. Because this case represents a clear abuse of the litigation process, the undersigned also recommends the imposition of immediate pre-filing restrictions with the adoption of this R&R. A separate order has been filed that directs Plaintiff to "show cause" why additional sanctions should not be imposed.

## II.     Allegations of Amended Complaint

At the heart of this lawsuit is Lipin's insistence that her late husband, Arthur McKee Wisehart ("AMW"), "legally conveyed" a number of real estate properties to Lipin prior to his death.[1] According to the 23-page typed amended complaint, four parcels of Ohio real estate located in Preble County, Ohio were among the properties conveyed to her. (Doc.

---

[1]Plaintiff alleges that Arthur McKee Wisehart passed away at the age of 94 on August 5, 2022.

3, ¶¶ 10, 12). Plaintiff asserts three separate claims under RICO (Counts I-III), and a fourth claim under 42 U.S.C. § 1983 against Defendant ADW[2] and his Colorado attorney Mark Apelman. Plaintiff bases all four claims on allegations that ADW and Apelman "implemented [a] scheme to cause court-ordered fraudulent transfers of the Ohio and Colorado real estate properties of which Plaintiff was, and continues to be, the recorded deeded legal title owner." (Doc. 3, ¶ 56; *see also* ¶ 57 (alleging loss of cash rental farm income relating to the Ohio farms); *id.* at ¶¶ 65-72 (alleging the loss of property based on Ohio court judgments allegedly "procured by fraud"); *id.* at ¶¶ 88-90 (alleging "court-ordered fraudulent transfer[s]" of Colorado properties in Colorado cases). For relief, Lipin seeks "to recover threefold the damages she sustained, restitution of her deeded legal titles to the real estate and farms located in Preble County, Ohio, restitution of Ohio farm cash rental income, restitution of her deeded legal titles to four separate and different parcels, buildings and structures thereupon, and water and mineral rights thereunder, that are located in Delta County, Colorado, and the cost of this lawsuit, including reasonable attorney's fees." (*Id.*, ¶ 16).

The amended complaint and exhibits attached thereto refer to multiple prior cases litigated by Lipin and AMW concerning Lipin's claims of ownership in the very same real estate. For example, Lipin alleges that ADW and his attorney procured a judgment in a Colorado federal court case, *Lipin v. Wisehart*, No. 1:16-cv-661, as well as in other cases, "by fraud." She alleges that the Colorado judgment was later used to "obstruct[] justice" in three Ohio state court cases filed in the Preble County Ohio Court of Common Pleas: No. 15-cv-30565, No. 22-cv-03240, and No. 22-cv-32572. (Doc. 3, ¶38). But at the end

---

[2]To avoid confusion, the undersigned refers to Defendant Arthur *Dodson* Wisehart and to his late father, Arthur *McKee* Wisehart, by their respective initials.

of the day, it is clear that the fundamental premise on which Lipin's claims are based – that AMW owned property interests in the subject properties that he "legally conveyed" to her – has been repeatedly rejected by other courts. The undersigned therefore rejects Lipin's claim of property interests in the referenced properties as not "plausible" and "frivolous" because those same allegations have been repeatedly proven to be both factually and legally false.

### III. Analysis

#### A. This Court Lacks Jurisdiction Based on *Rooker-Feldman* and Lipin's Lack of Standing; Issue Preclusion Further Bars Claims

Lipin invokes federal question jurisdiction because all four of her claims are based on federal law, including RICO (Counts I-III) and the civil rights statute, 42 U.S.C. § 1983 (Count IV). She also alleges diversity jurisdiction, despite the fact that all claims cite to federal statutes, not state law. Setting aside concerns about the lack of venue,[3] not to mention the entirely conclusory and patently frivolous nature of all four claims,[4] this Court lacks jurisdiction based on the *Rooker-Feldman* doctrine and Lipin's lack of standing.

---

[3]*See* 28 U.S.C. § 1391(b). "Although courts generally refrain from *sua sponte* dismissal for improper venue, such dismissal is properly within the court's discretion in certain circumstances." *Walton v. Jones*, No. 2:17-CV-13078-TGB, 2018 WL 4138926, at *1 (E.D. Mich. Aug. 29, 2018) (collecting cases). *See also Davis v. Reagan*, 872 F.2d 1025 (6th Cir. 1989) (affirming court's *sua sponte* dismissal before service of complaint on defendants for improper venue, since defendants resided in, and claims arose in a different jurisdiction than where plaintiff brought the action).

[4]Lipin has filed similar frivolous RICO and civil rights clams in other cases. In *Lipin v. Wisehart Springs Inn, Inc.*, 843 Fed. Appx. 103 (10th Cir. 2021), as one example, the court explained that Lipin's assertion of RICO claims did not undermine the preclusive effect of a previous adverse judgment on the same issues."[T]he remedies under RICO do not include setting aside a prior judgment or undermining its preclusive effect by a collateral attack." *Id.* at 108, quoting *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1187 (10th Cir. 2014)). *See also LaMie v. Wright*, No. 1:12-cv-1299, 2014 WL 1686145, at *19-20 (W.D. Mich. Apr. 29, 2014) (citing *Firestone v. Galbreath*, 976 F.2d 279, 285 (6th Cir.1992) and holding RICO claim based on conspiracy to deplete plaintiff's father's estate was not cognizable because plaintiff did not establish that he had any property interest and the heirs of an estate have no RICO claim arising from wrongs allegedly perpetrated against the decedent).

4

Lipin is a state court loser who consistently refuses to accept judgments against her, and who seeks to overturn the impact of those judgments in this Court. The *Rooker-Feldman* doctrine, established by two U.S. Supreme Court rulings issued 60 years apart, draws its support from 28 U.S.C. § 1257 and the principle that only the U.S. Supreme Court has appellate jurisdiction over the civil judgments of state courts. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). To determine the applicability of the *Rooker-Feldman* doctrine, the district court "must determine the source of the plaintiff's alleged injury." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). When a plaintiff complains not of a state court decision but of a third party's actions - but where that "third party's actions are the product of a state court judgment, then a plaintiff's challenge to those actions [is] in fact a challenge to the judgment itself." *Abbott v. Michigan*, 474 F.3d 324, 329 (6th Cir. 2007), citing *McCormick v. Braverman*, 451 F.3d 382 (6th Cir. 2006).

Here, Lipin seeks to undermine recent decisions by the Preble County, Ohio Court of Common Pleas and similar rulings by Colorado courts that Lipin never acquired any property interests in certain Ohio and Colorado parcels of real estate. Lipin's claims against ADW and his Colorado attorney, Apelman, are based on her disagreement with recent Ohio court decisions and with multiple other state and federal court decisions that have repeatedly held that she has no property interests in any of the subject properties. Below, the undersigned reviews at some length a total of eight prior cases litigated in Colorado and Ohio that have particular relevance to this lawsuit.

For the moment, though, it is enough to say that the *Rooker-Feldman* doctrine bars this case based on the prior Ohio and Colorado state court judgments. *Accord Tropf v. Fidelity Nat. Title Ins. Co.*, 289 F.3d 929 (6th Cir. 2002) (holding that plaintiffs' federal

claims were barred under *Rooker-Feldman*, because they challenged state court rulings in which they were denied relief based on various claims that their house was taken from them by fraudulent conveyance); *Stewart v. Fleet Financial*, 229 F.3d 1154, 2000 WL 1176881 (6th Cir. 2000) (case barred by *Rooker-Feldman* because it was yet another attempt to collaterally attack the foreclosure and eviction which had been decided in the Michigan courts); *Brantley v. Citimortgage*, No. 1:16-cv-707, 2016 WL 6092709, at *4 (S.D. Ohio Oct. 18, 2016) (court lacks subject matter jurisdiction because the source of plaintiff's injury is the state court judgment of foreclosure and sale of his former property).

Admittedly, *Rooker-Feldman* divests this Court of subject matter jurisdiction only to the extent that Plaintiff's alleged injuries arise from the judgments rendered by the Preble County Ohio Court of Common Pleas or the Delta County Colorado state court. To the extent that Lipin seeks to relitigate adverse judgments entered against her or AMW by *federal* courts, including a judgment entered by the U.S. District Court for the District of Colorado, the *Rooker-Feldman* doctrine has no application. But this Court must give full faith and credit to judgments entered by other federal courts as well as to judgments entered by state courts. And, despite the fact that collateral estoppel and res judicata are ordinarily affirmative defenses, *see* Fed. R. Civ. P. 8(c), they may be raised *sua sponte* by a court in "special circumstances," such as when "a court is on notice that it has previously decided the issue presented." *Arizona v. California*, 530 U.S. 392, 412 (2000).

Here, Lipin's amended complaint puts this Court on notice of the previously decided issues. Therefore, the undersigned finds it appropriate to raise the issues of claim preclusion and issue preclusion *sua sponte*. *See also Lawson v. City of Youngstown*, No. 16-3655, 2017 WL 11779106, at *1 (6th Cir., Jan. 3, 2017) (affirming *sua sponte* dismissal as patently frivolous under *Apple v. Glenn* where plaintiff was attempting to relitigate a

6

prior employment discrimination action that had been dismissed with prejudice); *LaMie v. Wright*, 2014 WL 1686145, at *15 (W.D. Mich., April 29, 2014) (holding that RICO claim arose from same transactions litigated in state court and was barred by *res judicata* as a "thinly veiled *c*ollateral attack on the Probate Court conservatorship proceedings" concerning the plaintiff's claims to real property, as well as a collateral attack against other state court judgments that had adjudicated plaintiff's property interests or lack thereof).

In addition to the lack of jurisdiction under the *Rooker-Feldman* doctrine (as to the state court judgments) and the additional preclusive effect of issues previously determined by the Colorado federal district court, this Court lacks jurisdiction under Article III of the U.S. Constitution. "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case - in other words, standing." *TransUnion LLC v. Ramirez*, 504 U.S. ___, 141 S.Ct. 2190, 2203, 210 L.Ed.2d 568 (2021) (quoting *Raines v. Byrd*, 521 U.S. 811, 819, 117 S.Ct. 2312 (1997)). In order to establish standing, Lipin must show: "(1) a concrete and particularized injury-in-fact which (2) is traceable to the defendant's conduct and (3) can be redressed by a favorable judicial decision." *Dickson v. Direct Energy, LP*, 69 F.4th 338 (6th Cir. 2023) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) and *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

Lipin lacks standing because she cannot show any of the requisite elements. Her claims for "restitution" and other damages rest wholly on imagined injuries to her (non-existent) property interests in the Ohio (and Colorado) properties. Multiple courts have conclusively determined that Lipin does not currently hold and has never held any property interests in those properties. This federal court must give full faith and credit to the decisions of the Ohio and Colorado courts on that issue and related issues. *Accord*

*Borkowski v. Fremont Inv. and Loan of Anaheim, Cal.*, 368 F.Supp.2d 822, 827 (N.D. Ohio 2005) (rejecting plaintiff's assertion that a state court wrongly decided a quiet title action, holding that state court decision was entitled to full faith and credit, that plaintiff's federal case was barred by *Rooker-Feldman*, and that plaintiff lacked standing based on his lack of a property interest).

The conclusion that this Court lacks subject matter jurisdiction requires a review of a total of eight prior cases in multiple courts. The next two sections of the analysis, sections B and C, focus on those eight cases. The summaries of the prior Colorado and Ohio cases provide detailed support for the conclusion that this Court lacks jurisdiction under *Rooker-Feldman* and under Article III, and for the alternative conclusion that issue preclusion serves as an additional bar.

But the extensive review of Lipin's litigation history comes at a cost: the significant expenditure of time required to review proceedings in other state and federal courts in Maine, New Jersey, New York, Colorado and Ohio, including a comparison to allegations made in the amended complaint in this case. At the end of that review, I am firmly convinced that this case is utterly frivolous and an abuse of the litigation process. Section D of this R&R explains why Lipin should be sanctioned for her pernicious conduct.

### B. The Four Prior Colorado Cases Filed in State and Federal Court

Lipin's amended complaint cites to two Colorado federal district court cases: *Lipin v. Wisehart*, No. 1:16-cv-661 ("*Lipin I*") and *Wisehart v. Wisehart*, No. 1:18-cv-21,[5] as well as to a third case initiated by ADW in state court to quiet title. *See Wisehart v. Wisehart*, Delta Cnty Colo. Dist. Ct. No. 2016cv30032. The undersigned takes judicial notice of a

---

[5]Lipin was not a party to *Wisehart v. Wisehart*.

8

fourth case initiated by Lipin in federal court approximately three weeks after the same federal court denied AMW's summary judgment motion in *Wisehart v. Wisehart*.

In that fourth case, *Lipin v. Wisehart Springs Inn, Inc. et a*l., No. 1:19-cv-935, Lipin alleged in part that ADW and three other individuals operated the Wisehart Springs Inn in Paonia, Colorado as a cover for illegal narcotics trafficking and money laundering. Based on a continued (false) assertion that she was the true owner of four parcels of Colorado real estate, Lipin sought declaratory relief, ejectment of the defendants, and compensatory damages. U.S. District Judge R. Brooke Jackson of the Colorado district court granted judgment to the defendants based on the two prior federal cases and the state court case. The detailed summary of the prior three cases set forth by Judge Jackson provides a greater understanding of why Lipin's current claims are barred by *Rooker-Feldman*, issue preclusion, and a lack of standing. In the interest of judicial economy, I quote extensively from Judge Jackson's summary, which begins with the first-filed 2016 federal case, *Lipin v. Wisehart I* ("*Lipin v. Wisehart I or "Lipin I"*").

### Lipin v. Wisehart I [No. 16-cv-661]

On March 21, 2016 Ms. Lipin sued the same Wisehart defendants, minus the Wisehart Springs Inn, concerning the same property in Paonia, Colorado that is the subject of the present case [1:19-cv-935]. Ultimately, I granted summary judgment in defendants' favor, *Lipin v. Wisehart,* No. 16-cv-00661-RBJ-STV, 2018 WL 828024 (D. Colo. Feb. 9, 2018). That decision was affirmed by the Tenth Circuit in *Lipin v. Wisehart,* 760 F. App'x 626 (10th Cir. 2019) (unpublished)…. [*Lipin I*].

The pertinent facts [of *Lipin I*] began in 1987 when Dorothy Wisehart created the Dorothy R. Wisehart Trust (the Trust). She named herself and her son, Arthur McKee Wisehart ("AMW") as co-trustees. As described by the Tenth Circuit,

She intended for the Trust assets to qualify for the $1 million "Generation Skipping Transfer Exclusion" for federal estate tax purposes and therefore directed in the Trust Agreement that $1 million would remain in the Trust upon her death...and that AMW's children and his wife,

Elizabeth, would become income beneficiaries of income from these assets.

760 F. App'x at 629.

AMW had four children: Arthur Dodson Wisehart ("ADW"), Ellen Wisehart, Winston Wisehart, and William Wisehart. In 1992 his daughter Ellen Wisehart and her husband, Richard Kreycik, bought the property in Paonia, Colorado that ultimately has become the subject of all this litigation. They did so through a trust called the Morning Sun Farm Trust. The property consists of four parcels of land. The Wisehart Springs Inn is located on the land.

In 1993 Dorothy Wisehart died. AMW became the sole Trustee of the Trust. AMW's wife, Elizabeth, and four children (ADW, Ellen, Winston and William) became income beneficiaries of the Trust.

In 1995 Ellen and her husband Richard quitclaimed the Paonia property to the Trust. At that time there was still debt on the property. In 1996 AMW assumed responsibility for that debt (which might explain some of the things that happened later). The debt was paid, but it is unclear where the funds came from.

In 2009 four of the five income beneficiaries of the Trust, exercising authority granted in the Trust Agreement, removed AMW as the sole trustee of the Trust and appointed AMW and ADW as co-trustees. AMW and ADW accepted their appointments as co-trustees.

In 2013 AMW's wife, Elizabeth, died. At that time ADW and his wife, Erin, and Ellen Wisehart and her husband, Richard, lived on the property. ADW and Erin operated the Wisehart Springs Inn.

In 2015 AMW married Joan C. Lipin. AMW was a lawyer of many years' experience. Ms. Lipin was his former client and paralegal. The Tenth Circuit described Joan as having "nearly two decades of experience as an active pro se litigant in federal and state courts in the Northeast." 760 F. App'x at 630. Ms. Lipin has indicated that she is a law school graduate." *Id.*[6]

In 2015, shortly after marrying Joan Lipin, AMW sued his son ADW, his son Winston, and the Wisehart Springs Inn in federal court in New Jersey. He alleged that the defendants had conspired to steal property from him… in violation of RICO. That lawsuit was later transferred to this district….

---

[6]In one of many prior cases in which she was warned about her vexatious conduct and ordered to pay defense costs, Lipin represented that she earned a J.D. degree from New York Law School in February 2005. *Lipin v. Ellis*, 2007 WL 2198876, at *14 (D.Me. July 26, 2007)

Still in 2015 AMW recorded two notices in the real estate records of Delta County, Colorado in which he stated (incorrectly) that he was the sole trustee of the Trust, and (incorrectly) that the Trust had transferred the Paonia property to him by warranty deed.

In January 2016, AMW (or Ms. Lipin) recorded four quit-claim deeds, one for each of the four parcels of the Paonia property, purporting to convey the parcels to Ms. Lipin. In February 2016 Ms. Lipin informed the defendants that they were trespassing; that they were illegally operating the Wisehart Springs Inn; and that she planned to sell at least three of the four parcels.

On March 16, 2016 ADW filed a lawsuit against AMW and Ms. Lipin in the Delta District Court seeking declarations that the Trust owned the property. Five days later, on March 21, 2016, Ms. Lipin filed *Lipin v. Wisehart I* in this court. She sought equitable relief, essentially to eject ADW, Erin, Ellen and Richard from the Paonia property.

On February 9, 2018 I granted summary judgment in favor of the defendants. 2019 WL 828024 at *3. I found that Ms. Lipin had provided "no evidence that there was anything flawed or invalid about the Appointment of Co-Trustee Document." *Id.* I further found that AMW had no right as Co-Trustee to convey the Paonia property without the signature of the other Co-Trustee, much less to convey it to himself. *Id.* Thus, I concluded that "Ms. Lipin has no interest in the Property. The Property continues to belong to the DRW Trust." *Id.*

Ms. Lipin appealed. The Tenth Circuit affirmed the grant of summary judgment in favor of the defendants [Jan 17, 2019]. Defendants requested sanctions against Ms. Lipin. The court stated, "We have no difficulty concluding Lipin's appeals are frivolous under Rule 38." 760 F. App'x at 637. However, because "the person who may be subject to sanctions must receive notice that sanctions are being considered and an opportunity to respond," the court granted Ms. Lipin fifteen days to show cause as to why she should not be sanctioned. *Id.*

Ms. Lipin did not show cause. On March 4, 2019 the Tenth Circuit imposed sanctions. *Lipin v. Wisehart, et al.,* Nos. 18-1060 and 18-1176, slip op. at 2 (10th Cir. March 4, 2009). On May 15, 2019 the Tenth Circuit remanded the case to this Court with directions to reduce the $15,000 sanctions order to judgment (including interest on any unpaid portion) and indicating that further appeals by Ms. Lipin would be summarily dismissed unless she submits proof of payment of the sanctions judgment. ECF No. 142. I issued the judgment as directed and, in doing so, ordered that a $10,000 cost bond held in the court registry plus accumulated interest would be released to defendants' counsel in partial satisfaction of the judgment. ECF No. 145. Whether the remainder of the sanctions judgment has been paid is unknown to me.

11

## Wisehart v. Wisehart (federal) [No. 1:18-cv-21]

This is the lawsuit mentioned above that was filed by AMW pro se (or someone on his behalf) in federal court in New Jersey in 2015, shortly after AMW married Ms. Lipin. [See *Arthur McKee Wisehart v. Arthur Dodson Wisehart, et al.*, New Jersey District Court No. 2:15-cv-2768]. It was transferred to the District of Colorado on January 4, 2018. No. 18-cv-00021-MSK-NYW. The defendants were ADW, the Wisehart Springs Inn, and Charles Winston Wisehart.

The Complaint described AMW as having been born on July 3, 1928, which made him 87 years old at the time of the filing, and as a graduate of the University of Michigan Law School in 1954, with various honors received thereafter. ECF No. 1 at ¶¶13-17 in 18-cv-00021. Much like the present case, the plaintiff alleged that the defendants conspired with themselves and with William Wisehart, Ellen Wisehart, Erin Jameson and Richard Kreycik to steal the Paonia property from him and the Trust, and to engage in wrongful acts on the property including illegal narcotics activities, mail fraud, wire fraud, extortion and money laundering, all in violation of RICO. *See generally id.* at ¶¶18-127.

… Ultimately, the court … transferred the case to the District of Colorado. ECF No. 63.

Many pleadings later, plaintiff filed a motion for summary judgment. ECF No. 127. On March 5, 2019 the court, by Judge Krieger, denied that motion, finding that "Plaintiff has not come forward with evidence sufficient to state a *prima facie* claim [under RICO] even in the absence of a response by the Defendants." ECF No. 196 at 4. The court granted the plaintiff twenty-one days to submit admissible evidence sufficient to support his claims. *Id.* at 6. Plaintiff filed a response, ECF No. 202, but also filed an appeal. ECF No. 198. The appeal was dismissed for lack of jurisdiction. ECF No. 205. The case [18-21] remains in the district court….

*Lipin v. Wisehart Springs Inn, Inc.*, at *1-3 (original footnotes omitted). Subsequent to the filing of Judge Jackson's opinion in No. 1:19-cv-935, the federal district court in *Wisehart v. Wisehart*, No. 1:18-cv-21, granted summary judgment to the Defendants (including ADW), dismissing AMW's multiple RICO claims against his son and others. AMW

appealed. Six months before his death, the Tenth Circuit imposed sanctions on AMW after finding his appeals to be frivolous.[7]

Returning to Judge Jackson's opinion in *Lipin v. Wisehart Springs Inn*, No. 1:19-cv-935, the undersigned also incorporates his summary of the 2016 state court case filed by ADW (as trustee) against AMW and Lipin, Delta County No. 16CV20032, which was the first of the four Colorado cases.

### Wisehart v. Wisehart (Delta County)

On March 16, 2017 ADM, as Co-Trustee of the Trust, filed a lawsuit in the District Court for Delta County, Colorado against AMW and Ms. Lipin. No. 16CV30032. ADM sought a declaration that the Paonia property was owned solely by the Trust and damages for breach of fiduciary duty and other common law theories and for the recording of ineffective documents in the real estate records of Delta County. In apparent reaction to that filing, Ms. Lipin filed *Lipin v. Wisehart I* in this Court five days later. A chronology of the case can be found in the order of Delta District Judge Steven L. Schultz issued March 26, 2019, filed as ECF No. 12-2 in the present case.

Briefly, as shown in Judge Schultz's order, [ ]AMW and Ms. Lipin were served and filed motions to dismiss and other motions, but they never answered. After twice denying plaintiff's motion for a default, in order to give AMW and Ms. Lipin a further opportunity to answer, the clerk entered a default. The court set a hearing on plaintiff's motion for a default judgment, but neither AMW nor Ms. Lipin nor anyone on their behalf appeared. The court was satisfied that a default judgment should enter but, nevertheless, set a hearing on August 20, 2018 to consider damages. The defendants tried to call in for that hearing but the court denied that request, "given the vexatious history of the Defendants' involvement in this case and the complexity of the remaining damages issues." *Id.* at 5, ¶10. Nevertheless, the court rescheduled the hearing for October 12, 2018. AMW and Ms. Lipin failed to appear. *Id.* ¶11.

In its order of March 26, 2019, the court entered a declaratory judgment that the Paonia property was vested solely in the Trust, that AMW and ADW were validly appointed as Co-Trustees, and that any sale or disposition of the property requires the approval of both Trustees so long as there remain two Co-Trustees. *Id.* at 6, ¶1. This order was consistent with this Court's

---

[7]The Tenth Circuit explicitly recognized the "concern that Mr. [McKee] Wisehart and Ms. Lipin are working in tandem to harass Defendants (including ADW) and avoid filing restrictions by bringing essentially the same claims in separate lawsuits," but in the absence of Lipin being a party, declined "to consider Ms. Lipin's conduct when sanctioning" AMW. (Feb. 7, 2022 Order Granting Motion for Sanctions in Appeal No. 21-1148).

order to the same effect in *Lipin v. Wisehart I,* as affirmed by the Tenth Circuit.

The court also found that AMW's filing of a deed of trust, an affidavit, two notices of transfer, and four quitclaim deeds contrary to the true ownership of the property constituted self-dealing and a breach of fiduciary duty, such that all such recorded documents were void and set aside. *Id.* ¶¶2-5. The court described these documents as "either groundless, contain a material misstatement or false claim, or are otherwise invalid and are spurious document[s], pursuant to C.R.S. § 38-35-109(3) and C.R.S. § 38-35-201(3), or because they were procured or resulted from the improper acts of Arthur McKee Wisehart, in breach of his fiduciary duties to the trust and to the beneficiaries thereof." *Id.* at 7, ¶8.

As for Ms. Lipin, the court found that AMW could not convey an interest in the Paonia property to her, and indeed, Ms. Lipin "had actual knowledge, inquiry notice, and/or constructive notice that Arthur McKee Wisehart had no authority to convey the Paonia Property to himself, that she was not a bona fide purchaser for value of the Paonia Property, and that those Recorded Documents under which she claims ownership were invalid and ineffective to convey title to the Paonia Property." *Id.* at 6, ¶¶ 6-7.

The court found that the plaintiffs were entitled to statutory penalties of $6,000 ($1,000 for each of the six recorded bogus documents) jointly and severally against AMW and Ms. Lipin. *Id.* at 7, ¶10-12. In addition, the court found AMW and Ms. Lipin liable for civil theft, *Id.* at 9, ¶¶24-26; and civil conspiracy, *Id.* at ¶¶28-29. It enjoined AMW and Ms. Lipin from recording any further documents affecting title to the Paonia property on a pro se basis without first acquiring leave of court. *Id.* at 10, ¶¶32-34.

The [state court] also found that AMW and Ms. Lipin's conduct in the lawsuit was frivolous, vexatious, and engaged in by them in bad faith and to increase the costs to ADW to recover the illegally transferred property, noting that it was relying on the court's own findings but also the findings and conclusions of this Court and the Tenth Circuit in *Lipin v. Wisehart I.* It awarded attorney's fees in the amount of $31,745 against both defendants and an additional $1,200 against AMW alone. *Id.* at 12, ¶48.

The present case was filed by Ms. Lipin on March 29, 2019. This was three days after Judge Schultz's decision in the Delta County case (and as noted earlier, approximately three weeks after Judge Krieger denied plaintiff's (AMW's) motion for summary judgment in *Wisehart v. Wisehart (federal case).*

*Lipin v. Wisehart Springs Inn, Inc.*, No. 1:19-cv-935, 2020 WL 42879, at *3-4 (D. Colo.,

Jan. 3, 2020).

14

Judge Jackson dismissed *Lipin v. Wisehart Springs Inn, Inc.* after concluding in relevant part that Lipin's "claims regarding ownership of the Paonia property are the foundation on which all her claims rest," and that prior rulings from the Colorado U.S. District Court in *Lipin I*, the Tenth Circuit, and the Delta County District Court all disproved that assertion. In addition to noting that Lipin was barred by the doctrine of issue preclusion, Judge Jackson noted *sua sponte* that Lipin may not have standing due to her lack of any property interest. *Lipin v. Wisehart Springs Inn, Inc.*, 2020 WL 42879, at *5 and n.3. Judge Jackson anticipated that Lipin's litigation history "indicates that Ms. Lipin will not respect the orders of courts in which she files lawsuits and is heedless of the impacts, financially and otherwise, that her lawsuits have on the persons she sues." *Id.* at *7. Describing her latest lawsuit as "an abuse of the litigation process," he imposed pre-filing restrictions that barred Lipin from filing "another pro se lawsuit, in her name or in anyone else's name, in the United States District Court for the District of Colorado which raises her claim of ownership of the Paonia property or her claim that the Co-Trustee Agreement is invalid or unenforceable, without the express advance approval of one of the United States District Judges in this district." *Id.*

The Tenth Circuit not only affirmed Judge Jackson's opinion on the merits,[8] but in an effort "to redress Lipin's repeated abuse of the litigation process," expressly invited Defendants to move for an award of sanctions pursuant to Fed. R. App. P. 38. The Tenth Circuit also imposed filing restrictions. *Lipin v. Wisehart Springs Inn, Inc.*, 843 Fed. Appx. 103, 106-107 (10th Cir. Jan. 15, 2021). On June 24, 2021, the appellate court directed Lipin to pay monetary sanctions totaling $45,500 to various defendants. When Lipin failed

---

[8]Concluding that issue preclusion applied, the Tenth Circuit declined to consider the additional applicability of claim preclusion (res judicata).

to pay within 30 days, the Tenth Circuit entered an order that prohibited her "from filing any civil appeal or original proceeding for mandamus or prohibition that raises the same or similar issues" asserted in three separate Tenth Circuit cases "unless and until she submits written proof…that she has fully complied with the payment directives in the Sanctions Order." (Order of 9/23/21). The Supreme Court denied Lipin's petition for writ of certiorari. *Id.*, 142 S. Ct. 94 (Oct. 4, 2021).

### C. The Four Prior Cases in Ohio State Court

In addition to the four closely related Colorado cases, Plaintiff and her late husband, AMW, litigated four related cases in the Preble County, Ohio Court of Common Pleas: (1) *Arthur Dodson Wisehart v. Arthur McKee Wisehart, et al*., No. 15CV30565[9] (first quiet title and breach of fiduciary duty case) (2) *Arthur Dodson Wisehart v. Joan Lipin*, No. 22CJ00248 (certificate of judgment case); (3) *Arthur Dodson Wisehart v. Joan Lipin*, *et al*., No. 22CV032572 (second quiet title and vexatious litigant case), and (4) *Joan Carol Lipin  et al. v. Arthur Dodson Wisehart*, et al., No. 22CV32420 (declaratory judgment action). Similar to the background of the Colorado litigation, all four cases arise out of disputed property rights and AMW's ineffective attempts to transfer four parcels of land located in Preble County, Ohio ("the Ohio farms") to his new wife, Lipin.[10]

### 1. *Wisehart v.  Wisehart, et al.,  No. 15CV30565*

In July 2015, in his capacity as co-trustee of his grandmother's original Dorothy R. Wisehart Trust ("DRW Trust"), ADW filed suit against his father, AMW, both individually

---

[9]Preble County Court of Common Pleas Case No. 15-cv-030565, Although Lipin was never a party to this case, she filed numerous motions and briefs following AMW's death on August 5, 2022. On December 5, 2022, the Ohio court granted ADW's motion to strike her improper filings from the record and explicitly barred her from "any further filings of any kind in this case."
[10]The four parcels make up three farms, generally described as the New Paris Farm, the Oxford-Gettysburg Farm, and the Crubaugh Road Farm. A good description of the property is contained in the September 22, 2022 decision filed in Preble County Court of Common Pleas No. 22CV032572.

and in AMW's capacity as co-trustee of the DRW Trust, to quiet title in two Ohio farms. An opinion from the Court of Appeals of Ohio provides the pertinent background of this first quiet title case and is therefore quoted extensively. For consistency, the undersigned substitutes the parties' initials for the middle names used by that court:

> The lawsuit sought to quiet title to the Preble County real estate held by the Trust. [ADW] alleged that [AMW] was attempting to sell the Preble County real estate despite lacking the authority to do so. [ADW] also requested the court declare that [AMW] was not the sole trustee of the Trust, and that [AMW] and [ADW] were cotrustees. [ADW] additionally asserted a claim for breach of fiduciary duty against [AMW] and requested an accounting of any Trust income received by [AMW].
>
> {¶7} As the lawsuit progressed, the trial court issued orders enjoining [AMW] from selling the Farms, ordering him to maintain the status quo, and further ordering him to deposit any income produced by the Farms with the court until the matter could be decided. [AMW] violated these orders and the court ultimately found him in contempt. [AMW] appealed the contempt order. We affirmed the trial court [on Sept 23, 2019]. *Wisehart v. Wisehart*, 12th Dist. Preble No. CA2018-12-019, [2019 WL 4593510], 2019-Ohio-3833.
>
> {¶8} In 2019, the parties filed cross-motions for summary judgment. Subsequently, the trial court issued its summary judgment decision, which denied [AMW]'s motion and granted [ADW]'s motion. The court found that (1) the Trust held an undivided one-half interest in the Farms, (2) the appointment of [ADW] and [AMW] as cotrustees was valid, (3) all of [AMW]'s prior attempts to convey the Farms out of the Trust were void, and (4) that [AMW] breached his fiduciary duty to the Trust, must provide an accounting for his actions, and must repay the Trust income that he wrongfully withheld. [ADW] subsequently moved for attorney fees and the court held a hearing. In December 2020, the court granted [ADW] $134,374.22 in attorney fees. [AMW] appealed and this court affirmed the trial court's decision. *Wisehart v. Wisehart*, 12th Dist. Preble No. CA2021-01-001, [2021 WL 4736583], 2021-Ohio-3649.[11]
>
> {¶9} On October 29, 2020, [ADW] moved the court for an order identifying the conveyances of the Farms by [AMW] that were ordered to be set aside and declared a nullity pursuant to the trial court's prior order. On November 5, 2020, the trial court granted [ADW]'s motion. The trial court found that [AMW]'s attempts to convey Trust property to himself or his new spouse, Joan Lipin, were a nullity and ordered those attempted conveyances be set

---

[11]The Ohio Court of Appeals rejected AMW's appeal of the trial court's order as "meritless" on October 12, 2021. In that appeal, AMW made many of the same arguments that Lipin includes as allegations in her latest complaint in this Court, such as an assertion that when Dorothy died in 1993, her Trust became irrevocable and that ADW was thereafter prohibited from becoming a trustee.

aside. The trial court specifically detailed 12 such attempted conveyances that were to be set aside and nullified. There was no timely appeal from this entry.

{¶10} On April 1, 2022, [AMW] filed a "motion to reopen case" pursuant to Civ.R. 60(B)(5). [AMW] claimed that Lipin was an indispensable party to the declaratory judgment action filed by [ADW] on July 15, 2015, and that the failure to join her as a party deprived the trial court of jurisdiction. Therefore, [AMW] argued that the trial court's orders were void. On April 25, 2022, the trial court denied [AMW]'s motion on the basis that Lipin had no legally protected interest in the matter. [AMW] now appeals, raising a single assignment of error.

*Wisehart v. Wisehart*, 2022 -Ohio- 3774, ¶¶ 6-10, 2022 WL 13671641, at *1-2 (Ohio App. 12 Dist., Oct. 24, 2022).

The Ohio Court of Appeals rejected AMW's appeal on the merits, holding that "[b]ecause [AMW] had no interest in the undivided one-half interest held by the Trust, the attempted transfer by way of the quitclaim deed was ineffective and conveyed nothing to Lipin." *Id.* at *3. The court also held that AMW's arguments under Rule 60 were untimely. *Id.* In other related proceedings, the Ohio Supreme Court repeatedly declined numerous requests for review and for reconsideration by both AMW and Lipin.[12]

## 2. *Arthur Dodson Wisehart v. Joan Carol Lipin, No. 20CJ00248*

ADW filed a Certificate of Foreign Judgment, 20-FJ-000015, against both Lipin and AMW. The Foreign Judgment arose out of three different Colorado judgments obtained against AMW and Lipin. The judgment against Lipin, in the amount of $101,235.00 with interest from and after March 26, 2019, plus costs, arose from the underlying Colorado state court case, *Arthur Dodson Wisehart v. Arthur McKee Wisehart and Joan Carol Lipin*, No. 16CV30032. Lipin objected to entry of the judgment on grounds that it was the product

---

[12]*See, e.g.*, *Wisehart v. Wisehart*, 158 Ohio S. 3d 1411 (Feb. 18, 2020); 160 Ohio St.3d 1440 (Oct. 27, 2020), 165 Ohio St.3d 1524 (Feb. 1, 2022); 166 Ohio St.3d 1451 (March 29, 2022); 169 Ohio St.3d 1474 (March 28, 2023), 170 Ohio St.3d 1430 (May 23, 2023). *See also, e.g., Lipin v. Wisehart*, 169 Ohio St.3d 1501 (April 25, 2023); *Lipin v. Wisehart*, 170 Ohio St.3d 1451 (June 20, 2023).

of fraud. On February 22, 2023, the trial court denied her motion to strike the Certificate of Judgment. Her Rule 60 motion to vacate the adverse judgment was overruled on October 18, 2023. Dissatisfied with the court's rulings, Plaintiff sought repeatedly to disqualify the presiding judge, Preble Common Pleas Judge Stephen R. Bruns. The Supreme Court's denial of her third affidavit of disqualification was docketed on October 27, 2023.

### 3.  *Lipin, et al. v. Wisehart*, et al., No. 22CV32420

This declaratory judgment case was filed on April 5, 2022 by Lipin and AMW following their losses in other cases. Their complaint sought a declaration that they are joint owners with right of survivorship of two parcels of real estate, which make up what has been referred to as the New Paris Farm in Preble County, Ohio. Plaintiffs sought a default judgment after defendants filed their answer two days late. The trial court denied default judgment and numerous repetitive motions filed by Lipin on the same issue.

On July 14, 2022, Judge James A. Brogan granted the defendants' respective motions to dismiss the complaint, rejecting AMW's attempt "to re-litigate the issue of whether he is the sole trustee of the Dorothy R. Wisehart Trust." The court agreed that all relevant issues had been decided against Lipin and AMW in the 2015 quiet title case, in which the court previously had held:

> [1] [T]he DRW Trust held an undivided interest in the Farms, (2) the appointment of [ADW and AMW] as co-trustees was valid, (3) [AMW's] prior attempts to convey the Farms out of the Trust were void, and (4) that [AMW] breached his fiduciary duty to the Trust, must provide an accounting for his actions, and must repay the Trust income that he wrongfully withheld.
>
> …AMW engaged in similar conduct in Colorado when he attempted to convey Colorado parcels of real estate belonging to the DRW Trust to Joan Lipin. Lipin brought a declaratory judgment action… in Colorado….. Judge

> Brooke Jackson of the District Court in Colorado held that Lipin had no legal interest in the property….

*Id.* (emphasis original). The Ohio court also found persuasive the federal court opinions by Judge Jackson and the Tenth Circuit that Lipin had no legal interest in the Colorado property. The court noted that Lipin had already been sanctioned once, by being ordered to pay ADW $134,474.22 in attorney fees in the Preble County Court of Common Pleas No. 15CV30565, with that decision affirmed by the Twelfth District Court of Appeals on October 12, 2021 in all respects, including the ruling "that AMW's attempts to transfer the Trust's half-interest to himself and/or his spouse Joan Lipin was invalid, void, and a legal nullity." *Id.*

Based on its prior rulings, the trial court held that Lipin lacked standing to sue for declaratory judgment.

> This Court agrees with the Defendants that Joan Lipin had no standing to bring this declaratory judgment action. The Court has previously declared that AMW's attempts to transfer the Preble County properties to himself and Lipin were legal nullities. In other words, AMW as a grantor could not convey the property to Lipin as a grantee.

(7/14/22 Order). Finding the declaratory judgment action to be "wholly frivolous and without any legal foundation," the court directed defendants to "submit evidence of their attorney fees before final judgment is entered." *Id.*

Over the following months, the court denied a large number of motions filed by Lipin and granted a protective order to preclude Lipin from engaging in impermissible discovery. The court set a hearing to determine the amount of sanctions and denied more motions filed by Lipin related to that hearing. Finally, on September 20, 2023, the court formally granted defendants' motion for fees as a sanction for Lipin's frivolous conduct, including the initiation and prosecution of the underlying lawsuit. The order awarded $54,268.50 in fees and expenses in the amount of $1,238.98 to defendant Beach (ADW's

attorney), plus an additional $5,000, plus $3,416.67 to ADW, plus $9,804.00 in fees and $150 in expenses to other defendants. In its September 20 order, the Ohio court also held that the underlying case, No. 22CV32420, was barred by the doctrine of issue preclusion or collateral estoppel.[13] On November 1 and November 13, 2023, the trial court overruled additional post-judgment motions filed by Lipin.[14]

### 4. *Wisehart v. Lipin et al., No. 22CV032572*

On November 22, 2022, ADW, in his capacity as Trustee of the AMW Family Trust and as Trustee of the DRW Trust, filed a second quiet title lawsuit against Lipin, the Estate of AMW, and John Does.[15]  The complaint included three counts: (1) to quiet title in three Ohio farm properties; (2) against Lipin to declare her a vexatious litigator; and (3) for slander of title concerning the New Paris farm property. Consistent with her practice in other cases, Lipin filed scores of documents and motions including claims against ADW and his attorney and multiple affidavits that unsuccessfully sought to disqualify the presiding trial judge.  On July 27, 2023, the trial court granted a motion to strike and/or dismiss Lipin's filings captioned as "Counterclaims," "Cross-Claims" and "Third-Party Complaint" filed on February 27, March 7 and March 31, 2023, respectively.  On September 7, 2023 – after awaiting another Supreme Court decision denying Lipin's third request to disqualify him - Judge Bruns denied another dozen motions filed by Lipin.[16]

---

[13]In its initial July 14, 2022 Order, the court suggested this argument may be "problematic." However, in the final and appealable order of September 20, 2023, the trial court corrected its ruling to hold that issue preclusion as well as a lack of standing bars Lipin's claims.

[14]November 13, 2023 is the last date the undersigned reviewed the state court dockets in any of the Preble County cases.

[15]On September 22, 2023, the trial court held that the only effective Defendant is Lipin.

[16]The next day, Lipin filed a fourth affidavit for disqualification. Lipin has repeatedly moved to disqualify ADW's counsel and the judges who preside over her cases. Her attempts to disqualify Judge Bruns in Case No. 22CV032572 illustrate her tactics. In an order dated April 14, 2023, the Chief Justice of the Ohio Supreme Court denied Lipin's first affidavit of disqualification. *See* Ohio Supreme Court Case No. 23-AP-024. On May 15, 2023, the Ohio Supreme Court denied Lipin's second affidavit of disqualification. *See* Ohio Case No. 23-AP-064. On September 5, 2023, the Ohio Supreme Court denied Lipin's third affidavit of

On September 7, 2023, Judge Bruns also granted Plaintiffs' motion for summary judgment on the claim that Lipin is a vexatious litigator and imposed pre-filing restrictions. On September 22, 2023, the court granted summary judgment against Lipin on the remaining two claims in the complaint and denied a cross-motion filed by Lipin as "wholly without merit." The court reiterated that AMW's various attempts to transfer the Ohio farm properties in affidavits dated April 20, 2015 and/or filed on June 1, 2015 were legal "nullities." The court held that later-filed documents captioned as either a "Corrective Quit Claim Deed" or a "Quit Claim Deed of Grantor to Arthur McKee Wisehart, Personally" were also ineffective and legal "nullities" that did not convey any interests in the subject premises. Because AMW had no interests to convey, subsequent attempts to convey interests to his new wife, Lipin, including purported Survivorship Deeds, also were nullities. Last, the court rejected Lipin's filing of "affidavits of survivorship" asserting an ownership interest as "nullities." The court concluded:

> The Dorothy R. Wisehart Trust owns an undivided one-half interest in the New Paris Farm and the AMW Family Trust owns an undivided one-half interest. The Dorothy R. Wisehart Trust owns an undivided one-half interest in the OxfordGettysburg Farm and the AMW Family Trust owns an undivided one-half interest. The AMW Family Trust owns the Crubaugh Road Farm.

*Id*., Decision and Judgment Entry of September 22, 2023.

The court also concluded that Lipin had committed the tort of slander of title by filing Affidavits of Survivorship purporting to state that she owned the entire New Paris Farm, even though ownership had been previously and finally adjudicated against Lipin. The court directed ADW to submit claims for damages on the slander to title claim, with

disqualification. *See* Ohio Case No. 23-AP-110. Her fourth attempt also failed. *See* Ohio Supreme Court Case No. 23-AP-139. In its October 20, 2023 order in Supreme Court Case No. 23-Ap-148 (denying a third attempt to disqualify Judge Bruns in Case No. 20CJ000248), the Supreme Court described Lipin's repetitive attempts to disqualify Judge Bruns as "meritless."

costs to be paid by Lipin. After ADW chose not to make any claim for damages or fees, the state court issued a final appealable order on October 27, 2023 in which it dismissed with prejudice as "meritless" Lipin's latest pleading, entitled "First Amended Third-Party Complaint."[17]

### D.  This Court Should Dismiss With Prejudice Under *Apple v. Glenn*

The above summary of the eight related cases that Lipin and/or AMW have previously litigated compels the conclusion that Lipin's newly filed amended complaint in this Court is subject to dismissal for lack of subject matter jurisdiction under *Apple v. Glenn*.  The amended complaint is implausible and is factually and legally frivolous under the applicable standard. Under the circumstances, dismissal should be with prejudice. "While normally dismissal for lack of subject matter jurisdiction is without prejudice, dismissal with prejudice is appropriate ... [when the] Complaint is frivolous." *See Jones v. United States*, No. 2:20-cv-2331, 2021 WL 981298, at *3 (W.D. Tenn. Mar. 16, 2021) (citing *Meitzner v. Young*, No. 16-1479, 2016 WL 11588383, at *1 (6th Cir. Oct. 25, 2016)); *Ernst v. Rising*, 427 F.3d 351, 367 (6th Cir. 2005); *accord Bardes v. Bush*, No. 1:22-cv-290, 2023 WL 2364664, at *9 (S.D. Ohio March 6, 2023).

### E. Sanctions Under Rule 11, 28 U.S.C. § 1927, and Inherent Authority

In addition to dismissal of this case with prejudice, the Court should impose at least pre-filing sanctions against Lipin under Rule 11, 28 U.S.C. § 1927, and its own inherent authority. Plaintiff's initiation of this new federal lawsuit based on demonstrably false factual and legal premises is in violation of Rule 11 and 28 U.S.C. § 1927. "[T]he Supreme Court and the Sixth Circuit have held that Rule 11, § 1927, the inherent power of the

---

[17]In that pleading, Lipin sought to file new claims against ADW and two of his attorneys, including Ms. Beach and Mr. Apelman

court, and any of several other rule and statutory provisions under which sanctions may be imposed, are complementary, not mutually exclusive." *Scott v. Sanders*, 789 F.Supp.2d 773, 775 (E.D. Ky. 2011) (citations omitted). Rule 11 and § 1927 both apply to pro se litigants. *See Gitler v. Ohio*, 632 F.Supp.2d 722, 724 (N.D. Ohio 2009) (discussing 28 U.S.C. § 1927, citations omitted); *Jones v. Hamilton Cnty.*, No. 1:22-cv-134-MWM-SKB, 2022 WL 4007608, at *10 (S.D. Ohio Sept. 2, 2022) (discussing Rule 11), adopted at 2022 WL 17335777, at *2 (S.D. Ohio Nov. 30, 2022), affirmed at 2023 WL 7391704 (6th Cir. Nov. 8, 2023).

Above, the undersigned has focused on the eight prior cases in which Lipin or her late husband, AMW, have litigated the same or similar claims in the state and federal courts of Colorado and Ohio. But Lipin's litigation misconduct spans far beyond those eight cases. In fact, many courts have imposed both monetary and non-monetary pre-filing restrictions on Lipin based on her extraordinarily vexatious conduct in cases in which she has filed other frivolous RICO claims, presented and relitigated frivolous defenses and counterclaims, or filed frivolous appeals. As the Tenth Circuit explained in affirming the district court's opinion in *Lipin v. Wisehart Springs Inn, Inc.*, 843 Fed. Appx. 103 (10th Cir. Jan. 15, 2021):

> Lipin's history of litigation misconduct is well documented. Indeed, multiple courts have surveyed and documented cases throughout the country in which she has been sanctioned for her behavior, including the filing of frivolous suits. *See, e.g.*, *Lipin v. Hunt*, 573 F. Supp. 2d 836, 842–43 (S.D.N.Y. 2008) (discussing six prior cases in which Lipin was sanctioned for litigation misconduct); *Lipin v. Hunt*, No. 14-cv-1081-(RJS), 2015 WL 1344406, at *1 & n.1 (S.D.N.Y. Mar. 20, 2015) (collecting twelve such cases). The District Court for the Southern District of New York has stated: "[Lipin's] *modus operandi* is clear: she litigates variations of the same meritless claims against an ever-growing group of defendants over and over. Once [Lipin] receives the inevitably unfavorable decision, she simply brings the lawsuit again, adding lawyers, judges, and court clerks as defendants." *Lipin v. Hunt*, 2015 WL 1344406, at *11. The district court in

> this case found that this "is precisely what she has done here." R. Vol. 2 at
> 33.…
>
> We consider the legal issues raised on appeal and take measures to
> redress Lipin's repeated abuse of the litigation process.

*Id.* at 106-107; *see also, Lipin v Hunt*, No. 150972/14, 467, 28 N.Y.S.3d 15, 17-18, 2016

N.Y. Slip Op. 01746, 2016 WL 902489 (N.Y.A.D. 1 Dept., Mar. 10, 2016) (affirming

permanent injunction enjoining plaintiff from commencing additional suits regarding her

father's estate without prior court approval "in light of plaintiff's seemingly endless pursuit

of the same frivolous claims in numerous courts"); *Lipin v. Wisehart I*, No. 16-cv-661 (Doc.

14, ¶2, collecting cases and noting that "courts across the country have reprimanded Ms.

Lipin for a 'long and well-documented history of vexatious litigation.'"); No. 22CV032572

(noting that at least eight different courts have imposed filing restrictions against Lipin);

*Lipin v. Ellis*, No. 2:07-cv-92, 2007 WL 2198876, at *14 (D. Me. July 26, 2007) (discussing

Lipin's history of abusive litigation tactics and prior sanctions by multiple courts; *In re

Estate of Lipin*, 939 A.2d 107, 108, 2008 ME 16 (Me. 2008) (discussing Lipin's vexatious

litigation history, imposing sanctions for prosecuting a frivolous appeal).

Lipin's remarkable litigation history in Maine, New Jersey, New York, Colorado and

Ohio suggests that the United States District Court for the Southern District of Ohio is but

her latest target destination for abusive litigation practices. Lipin's sole motivation appears

to be to harass the Defendants while evading restrictions imposed by other courts, either

by ignoring the sanctions imposed by those courts or by filing suit in a new target court.

The most cursory review of the dockets of her Colorado and Ohio cases confirms that

Lipin refuses to take "no" for an answer and bombards opposing parties and the courts

with dozens of frivolous filings in virtually every case she litigates. Given that this case is

the ninth lawsuit regarding the same subject matter, it is highly likely that Lipin will persist in her vexatious conduct if this Court does not take proactive measures.

Enough is enough. Rule 11 "exists as a check on the filing of even a single frivolous lawsuit." *Rolle v. Lewis*, No. 19-cv-944,  2020 WL 1491382, at *3 (March 27, 2020). The rule requires pro se litigants and attorneys alike to certify that any pleading filed in a federal court: (1) is "not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; (2) is "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; (3) has "evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery...." Rule 11(b), Fed. R. Civ. P.  When a pro se litigant fails to comply with Rule 11 by filing a complaint in which no claims are warranted by existing law or any nonfrivolous argument, and the scant factual contentions that are included in the complaint appear to have <u>no</u> evidentiary support, as is evident in this case, a court "may impose an appropriate sanction." Rule 11(c). Specifically, under Rule 11(c)(3) a court may impose sanctions on its own initiative, after directing the party "to show cause why conduct specifically described in the order has not violated Rule 11(b)." Any sanction "must be limited to what suffices to deter repetition of the conduct" and "may include nonmonetary directives [or] an order to pay a penalty into court." Rule 11(c)(4). Here, Lipin's complaint violates multiple tenets of Rule 11(b) - it has been presented for an improper purpose, none of the asserted claims are supported by existing law or any nonfrivolous argument, and it contains no factual allegations with any evidentiary support or that likely would have evidentiary support after discovery.

Lipin has demonstrated her willingness to continue to engage in vexatious litigation without being deterred by pre-filing restrictions or monetary sanctions imposed by other courts.[18] Based on her abusive litigation tactics in other courts, this Court may sanction her without further warning under Rule 11, or 28 U.S.C. §1927, or the Court's inherent authority.[19] *See Emrit v. Trump*, No. 1:19-cv-18, 2019 WL 140107, at *3 (S.D. Ohio Jan. 9, 2019) ("Given Plaintiff's unusually extensive nationwide litigation history, the undersigned is not unduly troubled by the lack of a prior express warning by this Court."). Still, to ensure that she has every opportunity to explain herself prior to being subject to sanctions in this Court, the undersigned will file a separate Order directing Lipin to show cause why pre-filing sanctions should not be imposed.

If Lipin does not show cause for her clear violations of Rule 11 and 28 U.S.C. §1927, the undersigned recommends that pre-filing restrictions be entered immediately, consistent with the sanctions previously imposed by the Tenth Circuit, the Colorado district court, and the Ohio courts concerning the same subject matter of this litigation. And, while no monetary sanctions are recommended *at this time*, Plaintiff Lipin also should be warned of the likelihood of additional sanctions, including additional pre-filing restrictions and monetary sanctions, should she engage in any future vexatious conduct

---

[18]History teaches that even pre-filing restrictions may not be sufficient to deter Lipin. See, e.g. *Lipin v Lipin*, No. 11649, 11650, 11651, 11652, 11653, 11654N, 150972/14, 153731/18, 124 N.Y.S.3d 693, 694-695, 2020 N.Y. Slip Op. 03292, 2020 WL 3086475 (N.Y.A.D. 1 Dept., June 11, 2020) (affirming prior award of sanctions, directing clerks of court "to accept no filings from this plaintiff as to the matters herein without leave of their respective courts" and imposing additional sanctions based on plaintiff's "longstanding and continuing abusive conduct" and "improper efforts to reargue and relitigate her claims arising out of the probate of her father's estate and to avoid the reasonable sanctions imposed on her for her defiance of properly issued filing injunctions.").

[19]The Sixth Circuit has confirmed that it is appropriate to impose sanctions upon pro se litigants who abuse the litigation process in other federal courts. *See e.g., Wilson v. Star Bank*, 173 F.3d 857 (6th Cir. Jan. 28, 1999) (Table, holding that district court acted appropriately in considering prior lawsuits filed by plaintiff in other courts under the PLRA); *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264 (6th Cir. 1998). Consistent with this authority, this Court has imposed pre-filing restrictions upon a handful of other litigants who have been sanctioned repeatedly by courts throughout the country without abating their vexatious conduct. *See, e.g.*, *Emrit v. Trump*, 2019 WL 140107; *Hurt v. Koch*, 2014 WL 2207349 (S.D. Ohio May 28, 2014).

in this Court. *See Greene v. Office of Comptroller of Currency*, 2020 WL 7327532 (S.D. Ohio, 2020); *Day v. OnStar, LLC*, 2019 WL 3322437, at *4 (E.D. Mich., 2019) (imposing pre-filing restriction while explaining that plaintiff's vexatious history suggested that monetary sanction would "likely only create further litigation" in the form of appeals or other lawsuits).

In recommending pre-filing restrictions that bar Lipin from filing any new lawsuit relating to her non-existent property interests in the Ohio or Colorado properties, the undersigned acknowledges the difficulty in finding an appropriate remedy that does not expend additional resources in the course of judicial gatekeeping. *See Marbly v. Wheatley*, 87 Fed. Appx. 535 (6th Cir. 2004) (mandating that pro se plaintiff first seek leave of court prior to filing a lawsuit); *Stewart v. Fleet Financial,* 229 F.3d 1154 (6th Cir. 2000) (requiring harassing and vexatious pro se litigator to file $25,000 bond prior to filing suit is not an abuse of discretion); *accord Lipin I, supra* (requiring $10,000 bond). A restriction that is frequently employed is to bar a vexatious litigant from filing further pro se actions without a certification from the Court or an attorney that the claims asserted are not frivolous and that the suit is not brought for any improper purpose. *See Ortman v. Thomas*, 99 F.3d 807, 811 (6th Cir. 1992); *Sawchyn v. Parma Municipal Court*, 114 F.3d 1188 (6th Cir. 1997) (Table, text available at 1997 WL 321112, requiring prefiling certification by attorney); *May v. Guckenberger*, 2001 WL 1842462, *6 (S.D. Ohio 2001) (requiring prefiling certification by attorney or a magistrate judge). To further reduce the potential waste of judicial resources in this Court, Lipin should be warned that she may be required to provide a certification from an attorney prior to filing any new lawsuit.

### IV. Conclusion and Recommendations

For the reasons discussed above, **IT IS RECOMMENDED THAT:**

1. This case should be **DISMISSED WITH PREJUDICE** for lack of jurisdiction because it is implausible and frivolous under the *Apple v. Glenn* standard, and because Plaintiff Lipin lacks standing to pursue any claims;

2. In the alternative, the case should be **DISMISSED WITH PREJUDICE** based on issue preclusion;

3. In addition to dismissal with prejudice, this Court should impose the following sanctions upon Plaintiff Lipin:

    a. In the absence of a strong showing of good cause within fourteen (14) days of the filing of the Show Cause Order, Plaintiff Lipin should be immediately enjoined and barred from filing any new pro se lawsuit, in her name or anyone else's name that raises her claim of ownership in any of the four Ohio parcels of real estate that make up the Ohio farms or in the Paonia Colorado property at issue in this case;

    b. Based on her vexatious history, Plaintiff Lipin should be formally warned that if she initiates any new civil case that is subsequently found to be frivolous, she will be declared to be a vexatious litigant in this Court subject to additional pre-filing restrictions. Specifically, she will be required to obtain a certification of an attorney in good standing that any new claims are not frivolous and that the suit is not brought for any improper purpose;

    c. Plaintiff Lipin also should be warned that any additional filings of any type that are found to be vexatious are likely to result in additional sanctions, including but not limited to monetary sanctions.

     *s/Stephanie K. Bowman*
    Stephanie K. Bowman
    United States Magistrate Judge

29

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JOAN CAROL LIPIN,

                                                        Case No. 1:23-cv-684

              Plaintiff,                               McFarland, J.

                                                       Bowman, M.J.

     v.

ARTHUR DODSON WISEHART,
a/k/a Arthur D. Wisehart, et al.,

              Defendants.

 

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).